<u>NOT FOR PUBLICATION</u>                                          [Docket No. 14]

```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW JERSEY
                     CAMDEN VICINAGE
```

DAVID WOJCIECHOWSKI and JENNIFER
WOJCIECHOWSKI,

        Plaintiffs,        Civil No. 11-566 RMB/AMD

   v.

                             OPINION

STATE FARM FIRE & CASUALTY
COMPANY,

        Defendant.

Jonathan Wheeler
Law Offices of Jonathan Wheeler
1617 JFK Boulevard, Suite 1270
One Penn Center
Philadelphia, PA 1910
    Attorney for Plaintiffs

Charles M. Fisher
Windels, Marx, Lane & Mittendorf, LLP
104 Carnegie Center, Suite 201
Princeton, NJ 08540
    Attorneys for Defendant

BUMB, United States District Judge:

Plaintiffs David and Jennifer Wojciechowski ("Plaintiffs") claim that Defendant State Farm Fire and Casualty Company

("Defendant") improperly denied coverage on a homeowner's insurance policy issued by the Defendant to the Plaintiffs. Plaintiffs further claim that Defendant misrepresented the scope of the insurance policy Plaintiffs purchased. Defendant has moved for summary judgment. For the reasons that follow, that motion is GRANTED.

I.   Background

Plaintiffs purchased a homeowner's insurance policy (the "Policy") from Defendant to cover their home located at 36 Merion Road, Marlton, New Jersey. The Policy covers, among other things, "accidental direct physical loss" to the home. Certification of Gerry Brannigan, Ex. B at 7. The Policy excludes from coverage a variety of losses. Among the losses it excludes are losses that "consist of, or [are] directly and immediately caused by[:]" (1) "wear, tear, marring, scratching, deterioration, inherent vice, latent defect or mechanical breakdown" (the "Wear and Tear Exclusion"); (2) "continuous or repeated seepage or leaking of water or steam from a . . . plumbing system . . . or other plumbing fixture . . . which occurs over a period of time" (the "Leak Exclusion"); or (3) "Water Damage, meaning . . . water below the surface of the ground" (the "Sub-Surface Water Exclusion"). Id. at 9, 10. These exclusions apply "regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damages,

arises from natural or external forces, or occurs as a result of any combination of these." Id. at 9, 10.  However, as an exception to these exclusions, the Policy does "insure for any resulting loss from [the exclusions], unless the resulting loss is itself a Loss Not Insured by" the exclusions section of the Policy (the "Resulting Loss Exception").  Id. at 10, 11.  The Policy also indicates that if "loss to covered property is caused by water or steam not otherwise excluded", the Policy will cover "the cost of tearing out and replacing any part of the building necessary to repair the system or appliance" (the "Tear and Repair Coverage").  Id. at 9.  Under a special fungus policy endorsement, the Policy generally excludes coverage for mold.  See Certification of Jonathan Wheeler, Ex. 1 at 9. However, the Policy provides for coverage (the "Mold Coverage") if it is caused by a "covered cause of loss" and the Leak Exclusion does not apply.  Id. at 11.  Finally, the Policy provides certain coverage to direct loss to personal property for "[s]udden and accidental discharge or overflow of water" (the "Sudden And Accidental Discharge Coverage").  Id. at 27.

When, in January 2010, Plaintiffs discovered water on the carpet of their family room, they hired a plumber, who determined the water was coming from a broken drain pipe. Plaintiffs sought coverage under the Policy for water damage as

3

a result of the broken pipe, as well as damages incurred in accessing the broken pipe.[1]

Defendant denied coverage under the Policy Exclusions discussed above. Plaintiffs then filed this suit claiming that: (1) they were owed coverage for the losses at issue under the policy; (2) Defendant's denial of coverage was in bad faith; and (3) Defendant misrepresented the scope of coverage prior to Plaintiffs' purchase and led Plaintiffs to believe coverage would extend to the type of loss at issue.

II.  Standard

Summary judgment should only be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." Mollo v. Passaic

---

[1] In their briefing, Plaintiffs also alluded to the cost of repairing the broken pipe, but later conceded that that cost was excluded. Docket No. 15 at p. 6 ("Therefore, even if the broken pipe itself is not covered under the State Farm policy, the policy **specifically** provides that the cost to tear out and replace it is covered.")(emphasis in original); Docket No. 25 at p. 2 ("In the matter before this Court, Plaintiffs do not dispute that the cost to repair the damage to the pipe which broke because of wear and tear is not covered."). Plaintiffs also alluded to coverage for damages associated with mold. Docket No. 15 at p. 3. However, Plaintiffs have pointed to no evidence that they, in fact, suffered mold damages. In any event, as discussed below, mold is generally excluded from coverage unless certain conditions - not applicable here - are present.

Valley Sewerage Commissioners, 406 F. App'x 664, (3d Cir. 2011)(quotation and citation omitted).

When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." Meyer v. Riegel Products Corp., 720 F.2d 303, 307 n. 2 (3d Cir.1983). However, "the mere existence of a scintilla of evidence," without more, will not give rise to a genuine dispute for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In the face of such evidence, summary judgment is still appropriate "where the record ... could not lead a rational trier of fact to find for the nonmoving party ...." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Summary judgment motions thus require judges to 'assess how one-sided evidence is, or what a 'fair-minded' jury could 'reasonably' decide.'" Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460 (3d Cir. 1989) (quoting Anderson, 477 U.S. at 265).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the

absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)(internal citations omitted). Then, "when a properly supported motion for summary judgment [has been] made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250 (internal citations and quotations omitted).

III. Analysis

The Court addresses each of Plaintiffs' three claims in turn.  Both parties cite to and, therefore, this Court will apply New Jersey law in assessing the claims.  See Transportes Ferreos de Venezuela  II CA v.NKK Corp., 239 F.3d 555, 560 (3d Cir. 2001)(applying New Jersey law where there was no dispute as to its application).

    A.   Plaintiffs' Coverage Claim

With respect to Plaintiffs' first claim, for coverage under the Policy, Defendant has moved to dismiss this claim based on the Exclusions described above.  The Court addresses each Exclusion in turn.

        1.   The Wear and Tear Exclusion

The Wear and Tear Exclusion provides that:

> 1.  We do not insure for any loss to the property described in Coverage A which consists of, or is directly and immediately caused by one or more of the perils listed in items a. through n. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or

      widespread damage, arises from natural or external forces, or occurs as a result of any combination of these. . . .

          g.   wear, tear, marring, scratching, deterioration, inherent vice, latent defect or mechanical breakdown.

Defendant's expert Gary Popolizio opined that wear and tear caused the pipe at issue to leak and that the claimed water damage was the result of the leak. <u>See</u> Certification of Charles M. Fisher, Ex. E at 7 ("[I]t is my opinion that the drain line servicing the kitchen for the subject home was replaced due to a leakage problem caused by . . . wear and tear of the drain pipe . . . that this "failure of the pipe (i.e. leaks) caused water to permeate into the soils below the kitchen . . . [and that] the claimed damage to the family room was caused by this ongoing leak."). Plaintiffs do not dispute these conclusions. <u>See</u> Oral Argument by Plaintiffs' Counsel of 3/14/2012 ("We don't have expert testimony to dispute that [the pipe's leaking was caused by wear and tear.] . . . My answer would be there's no dispute that this leak was caused by the pipe, by the failure of the pipe. . . . [The losses] were caused by water which discharged from the pipe."); <u>See also</u> Deposition of David Wojciechowski at 59-60 ("Q: So it was your understanding that all of the water damage in this case came from the drain line that ran from the kitchen to the family room wall? A: Yes."). There is also no dispute that Plaintiffs suffered losses from having to access

the broken pipe.  See Certification of Jonathan Wheeler, Ex. 5 at p. 2.  The only issue in dispute therefore is whether these undisputed damages are excluded under the terms of the Policy.  Because there is no factual issue in this regard, this Court may resolve, as a matter of law, whether such damages are excluded under the Policy under the Wear and Tear Exclusion.  Gladstone v. Westport Ins. Corp., No. 10-652, 2011 WL 5825985, at *5 (D.N.J. Nov. 16, 2011)(holding that interpretation of insurance contract terms is a matter of law for the court).  They are.

Affording the Policy its plain and ordinary meaning, as required under New Jersey law (Colliers Lanard & Axilbund v. Lloyds of London, 458 F.3d 231, 236 (3d Cir. 2006)), the Wear and Tear Exclusion plainly excludes the losses at issue here.  The Wear and Tear Exclusion excludes losses directly and immediately caused by wear and tear and it is undisputed that the pipe broke due to wear and tear.  Therefore, the losses at issue will be excluded from coverage under the Exclusion if they are "directly and immediately caused by" the undisputed wear and tear to the pipe.  Looking to the context of the phrase, particularly the fact that the Policy excludes loss whether they occurred suddenly or gradually, as well as the phrase's ordinary meaning, this Court interprets "directly and immediately caused by" to mean caused by, without an intervening event. See Merriam Webster's Dictionary (defining "directly" as "in a direct

manner"; defining "direct" as "marked by absence of intervening agency, instrumentality, or influence"; defining "immediately" as "in direct connection or relation"; defining "immediate" as "acting or being without the intervention of another object, cause, or agency"; defining "caused" as "to serve as a cause or occasion of").  Here, applying this definition and considering the evidence presented by the parties, all of the claimed damages were directly and immediately caused, without any type of intervening event, by wear and tear to the pipe.  Plaintiffs attempted at oral argument, but not in their briefing or through the submission of evidence, to dispute that the water damage losses were "directly and immediately caused" by wear and tear to the pipe.  Plaintiffs' counsel argued, with respect to damages, that: "Ok, first of all Judge, it wasn't caused by wear and tear.  It was caused by water which discharged from that pipe."  This is an empty distinction.  The water's leakage from the pipe is not an intervening event; it was the direct and immediate consequence of the damage to the pipe.  With respect to loss incurred from "accessing" the pipe to repair it, those damages are not meaningfully divisible from loss incurred to repair the pipe, which Plaintiffs concede is not covered.  Obtaining access to the pipe is an intrinsic aspect of the pipe repair process.  Even if these damages were somehow severable, Plaintiffs have not disputed that the damages from accessing the

9

broken pipe to repair it were also "directly and immediately caused" by wear and tear to the pipe and therefore excluded.

Plaintiffs also argue that, even if the Wear and Tear Exception applies, the Resulting Loss Exception nevertheless provides for coverage. It does not. While this Court must read the Policy generously in favor of the insured and its reasonable expectations, an exception to an exclusion, like the Resulting Loss Exception, cannot be read so broadly that the exception swallows the exclusion. GTE Corp. v. Allendale Mutual Ins. Co., 372 F.3d 598, 609, 614 (3d Cir. 2004). Here, Plaintiffs' interpretation of the Exception would do just that. The Resulting Loss Exception reads:

> However, we do insure for any resulting loss from items a. through m. unless the resulting loss is itself a Loss Not Insured by this Section.

(Certification of Gerry Brannigan in support of Defendant's Motion for Summary Judgment at Ex. B at 10)(emphasis added). The provision affirms coverage to losses that result from a listed exclusion, which includes the Wear and Tear Exclusion. Id. ("However, we do insure for any resulting loss from items a. through m."). However, it then excludes from coverage losses that meet the definition of excluded loss. Id. ("unless the resulting loss is itself a Loss Not Insured by this Section."). Losses that are excluded under the Policy include those that directly and immediately result from wear and tear. Id. at 9.

Read together, these provisions only allow for coverage for losses that result from, but are not directly and immediately caused by, wear and tear, or any other applicable exclusions. TMW Enterprises, Inc. v. Fed'l Ins. Co., 619 F.3d 574, 576-78 (6th Cir. 2010)(interpreting similar exclusion and exception similarly).

An illustration of allowable resulting loss exception might be helpful. For example, the Policy could potentially cover the hypothetical loss stemming from a workman accidentally breaking a window on the Plaintiffs' home while repairing the home from the water damage at issue here. While the wear and tear of the pipe would be the but-for cause of the broken window in that scenario, it would not be the direct and immediate cause because of the intervening negligence by the workman. Such loss would therefore be entitled to coverage. Plaintiff's proposed construction of the Resulting Loss Exception, in contrast, would almost entirely swallow the Wear and Tear Exclusion, by allowing for coverage for losses directly and immediately caused by wear and tear, like the losses here. This cannot be. Because Plaintiffs' losses are the direct and immediate result of wear and tear, they are excluded by the wear and tear exclusion and are not saved by the resulting loss exception, which does not extend to losses otherwise not insured – i.e. losses that are

11

the direct and immediate result of wear and tear.  Therefore, Plaintiffs' coverage claim fails and must be dismissed.

        2.    The Leak Exclusion

The Leak Exclusion provides that:

1.    We do not insure for any loss to the property described in Coverage A which consists of, or is directly and immediately caused by one or more of the perils listed in items a. through n. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these. . . .

    f.    continuous or repeated seepage or leakage of water or steam from a:

        (1)    heating, air condition or automatic fire protective sprinkler system;

        (2)    household appliances; or

        (3)    plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors;

Defendant's expert Gary Popolizio opined that the leak occurred over time and caused all of the water damage at issue. <u>See</u> Certification of Charles M. Fisher, Ex. E at 7 (describing the leak as "an ongoing concern over a period of time" and that the "claimed damage to the family room was caused by this ongoing leak").  Plaintiffs have submitted no evidence to dispute this.  In fact, as discussed above, Plaintiffs have admitted that all of the claimed water damage was a result of the leaking.  And Plaintiffs' responses to Defendant's requests

for admission acknowledge that Plaintiffs observed leakage weeks prior to reporting it to State Farm and, therefore, the leak occurred "over time."  See Certification of Charles M. Fisher, Ex. A.  Therefore, at least with respect to the claimed water damages, these damages are excluded under the Policy because they were caused by "continuous . . . leaking of water . . . from a . . . plumbing system . . . or other plumbing fixture . . . which occurs over a period of time."

    3. The Sub-Surface Water Exclusion

The Sub-Surface Water Exclusion provides that:

> 2. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events.  We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:
>
>   c. Water Damage meaning:
>
>     (1) flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water or spray from any of these, all whether driven by wind or rot;
>
>     (2) water or sewage from outside the residence premises plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

>   (3)   water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

Defendants rely on two pieces of evidence in support of the application of the exclusion, which excludes losses that would not have occurred without water damage from water "below the surface of the ground": (1) Gary Popolizio's expert report; and (2) the Second Certification of State Farm Team Manager Gerry Brannigan.  The expert report indicates that the broken pipe "was clearly located below the surface of the concrete floor slab and was buried in the soils that reside beneath the home." Certification of Charles M. Fisher, Ex. E at 8.  Likewise, Gerry Brannigan's Certification indicates that the "the broken pipe was buried in the dirt underneath the kitchen floor" and provides authenticated photographs that confirm the pipe's location as beneath the ground.  Second Certification of Gerry Brannigan.  Plaintiffs agree that the pipe was below the concrete slab but nonetheless contend that its placement was above the ground.  Docket No. 15 at 6 ("In the present case, the facts demonstrate that the water which caused damage to the Wojciechowski residence came from a pipe **below** the slab, but **above** the ground.")(emphasis in original).  However, they cite no evidence in support of this statement.  The only cited evidence is testimony from Plaintiff David Wojciechowski in

which he actually indicates that the pipe is located inside the concrete slab – evidence that Plaintiffs appear to disclaim in their briefing and that is belied by the photographs. Therefore, the only competent evidence before this Court is that the water that caused the water damage at issue came from beneath the surface of the ground. Accordingly, the Sub-Surface Water Exclusion applies and Plaintiffs cannot recover for any water damage.

        4.   Other Arguments Presented By Plaintiffs

Plaintiffs also argue in passing that they are entitled to coverage under the Tear and Repair Coverage, Mold Coverage, and Sudden and Accidental Discharge Coverage provisions. With respect to the first provision, as discussed above, that coverage only extends to losses that are not "otherwise excluded." Because all three Exclusions described above are applicable, any losses are "otherwise excluded" and this coverage is inapplicable. With respect to the second provision, Plaintiffs have pointed to no evidence that they sustained mold losses and, in any event, they would not be entitled to any coverage here. As discussed above, that coverage only extends to losses caused by a "covered cause of loss" and in which the Leak Exclusion is inapplicable. Here, the losses are not caused by a covered cause of loss and the Leak Exclusion is applicable. Plaintiffs are therefore not entitled to any coverage under

either of these provisions.  Finally, with respect to the third provision, this coverage is for personal property, not damage to Plaintiffs' dwelling, and Plaintiffs have not pointed to any damage to their personal property.

    B.   Plaintiffs' Bad Faith Claim

The dismissal of Plaintiffs' first claim is fatal to their second – for bad faith denial of coverage.  "In order to impose 'bad faith' liability, the insured must demonstrate that no debatable reasons existed for denial of the benefits available under the policy. Under the 'fairly debatable' standard, a claimant who could not have established as a matter of law a right to summary judgment on the substantive claim would not be entitled to assert a claim for an insurer's bad faith refusal to pay the claim."  Hudson Universal, Ltd. v. Aetna Ins., Co., 987 F. Supp. 337, 342 (D.N.J. 1997)(quotation and citation omitted).  Here, because Plaintiffs' underlying coverage claim fails, so too does their bad faith denial claim.  See New Jersey Title Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, No. 11-CV-0630, 2011 WL 6887130, at *7 (D.N.J. Dec. 27, 2011)(holding that dismissal of bad faith claim is warranted where the plaintiff cannot prevail at summary judgment on the underlying coverage claim).  Dismissal is therefore warranted for this claim.

    C.   Plaintiffs' Negligent Misrepresentation Claim

Plaintiffs have pointed to no evidence to support their negligent misrepresentation claim, and the only evidence presented to the Court is that no such representations were made. Deposition of David Wojciechowski at 41-42 (Q: Do you know of any fact that would support this claim in the third count that we just read that you relied upon State Farm's representations that you would be insured for various losses, including the loss that was suffered on January 26, 2010? . . . A: No, no one specifically told me.  Q: There were no representations from State Farm about the types of losses that were covered under the policy.  Is that fair?  A: Yes.").

Because it was Plaintiffs' burden to establish this claim, and they failed to present any argument or evidence in support of it, it must be dismissed. Conoshenti v. Public Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004)(holding that, where the plaintiff bears the burden of proof on an issue, summary judgment is appropriate when the defendant demonstrates "that there is an absence of evidence to support the nonmoving party's case")(quotation and citation omitted); Moffatt Ents., Inc. v. Borden Inc., 807 F.2d 1169, 1174 (3d Cir. 1986)(recognizing that the plaintiff bears the burden, in opposing summary judgment on fraud and negligent misrepresentation claims, to present evidence in support of their claims).

IV.  Conclusion

17

For all these reasons, Defendant's motions for summary judgment is GRANTED and the case is DISMISSED with prejudice.

                                                    s/Renée Marie Bumb
                                                    RENÉE MARIE BUMB
                                                    United States District Judge

Dated: May 8, 2012